United States District Court
Southern District of Texas
**ENTERED**
January 10, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RICKY DEAN FOWLER, § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | CIVIL ACTION NO. 4:19-cv-2215 |
| § | |
| MANUEL FIELDS, et al., § | |
| § | |
| Defendants. § | |

# MEMORANDUM OPINION AND ORDER

At the time the plaintiff, Ricky Dean Fowler, filed this Complaint, he was a state inmate in custody of the Texas Department of Criminal Justice ("TDCJ") at the Estelle Unit in Huntsville, Texas. He asserts claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 *et seq.*, against David and Ivory Ministries – Lieutenant's House; Manuel Fields, Chief Operating Officer of the Lieutenant's House; and Donna Reasonover, Administrator of the Lieutenant's House (collectively, "the Defendants"). Pending are Defendants' Motions to Dismiss (Docket Entry Nos. 39 & 45), Plaintiff's Motion for Summary Judgment (Docket Entry No. 43), and Defendants' Motion for Summary Judgment (Docket Entry No. 48). The Court has carefully considered the motions, responses, record, and applicable law and concludes as follows.

## I. BACKGROUND

In early June 2016, Fowler was released from TDCJ on a conditional parole release with a GPS monitor from the Scott Unit to the Lieutenant's House I.[1] On June 13, 2016, he was transported to Lieutenant's House II.[2] At that time, Fowler was on a SISP GPS monitor and was required to report to his parole officer by 9 a.m. the next morning.[3] He alleges that his temporary designated residence was the Lieutenant's House. Although Fowler claims that the Lieutenant's House is a privately owned and operated halfway house, the competent summary judgment evidence establishes that Defendant David and Ivory Ministries, Inc., under the assumed name of the Lieutenant's House, is a non-profit entity under section 501(c)(3) of the Internal Revenue Code.[4]

---

[1] See Docket Entry No. 1 at 4; see also Transport Notice, Docket Entry No. 48-2 at 13, Fields 000012 (indicating that Fowler was transported from the Scott Unit to the Lieutenant's House on or around June 7, 2016).

[2] See Transport Notice, Docket Entry No. 48-2 at 51, Fields 000050 (indicating that Fowler was transported from Lieutenant's House I to Lieutenant's House II on or around June 13, 2016. Fowler claims that Lieutenant's House I is located at 4728 Gunter Street, Houston, Texas 77020 and that Lieutenant's House II is located at 13834 Aldine Westfield, Houston, Texas 77039. See Docket Entry No. 43 at 1; Docket Entry No. 1 at 4.

[3] See Docket Entry No. 48-2 at 51, Fields 000050 (indicating that Fowler was on a SISP GPS monitor). "SISP," the Super-Intensive Supervision Program, is a special parole condition imposed by the Texas Board of Pardons and Paroles that requires a parolee to "submit to electronic monitoring" and "comply with a daily activity schedule," among other things. See Texas Board of Pardons and Paroles BPP-POL. 145.260 at 2 ("Mandatory" conditions). If directed by the supervising parole officer, a SISP parolee must also "reside in a community residential facility (halfway house) designated by the Division and comply with all of the facility rules and regulations in effect during their period of residence at the facility." Id. at 3 ("Discretionary" conditions).

[4] Docket Entry No. 48-1 at Fields 000008, 000025-28.

Fowler alleges that between June 13, 2016 to November 29, 2016, during the time he was released to parole to live in a halfway house, the Defendants violated the FLSA in connection with payment for work he was required to do while he was a resident there. Fowler states that when he arrived at the Lieutenant's House, he was advised of all of the program conditions, rules, and requirements. He claims that Defendants presented him with several documents to sign without providing much explanation.[5] Fowler alleges that Defendants told him that the documents and daily work were required and that he must sign out every morning and sign in every evening on the daily "Work Log Sheet" and "Appointment Log Sheet."[6] Fowler alleges that he had to be available to work each day from 5 a.m. to 5 p.m. and that he was to fill out a weekly activity sheet that had to be approved by personnel at the facility. He claims that he was not allowed to seek gainful outside employment while he was at the Lieutenant's House.[7]

On June 14, 2016, at his first parole meeting, Fowler requested to be relocated to a different program because he did not feel that the Lieutenant's House was beneficial for him to reenter and reintegrate into society. Fowler alleges that the Lieutenant's House did not provide educational programs or access to any outside social service programs. He alleges that he was subjected to involuntary servitude because he was not paid wages or permitted to earn any income. Fowler's parole officer denied his request for relocation to another program.

---

[5] Docket Entry No. 1 at 5.
[6] *Id.* at 5-6.
[7] *Id.* at 6.

3

Fowler claims that Defendants forced him to work daily as their employee or face eviction and return to prison. He states that Defendants told him that his labor went towards the room and board of the Lieutenant's House, but he claims he was never given a schedule of fees for rent and board. He also claims that he did not consent to the deduction of room and board from his pay and did not receive regular pay for the long hours of manual labor he performed daily, in violation of the FLSA. He alleges that these violations were willful.[8]

Fowler also complains that Defendants were deliberately indifferent to his medical needs in violation of his civil rights and that they subjected him to cruel and unusual conditions. The Court previously dismissed Fowler's civil rights claims under 42 U.S.C. § 1983 with prejudice as barred by the two-year statute of limitations. *See* Docket Entry No. 8. On appeal, the Fifth Circuit affirmed the dismissal of the civil rights claims but remanded Fowler's FLSA claim for the Court's consideration, noting that the FLSA has a three-year statute of limitations for willful violations. *See Fowler v. Fields*, No. 19-20500, at *2 (5th Cir. Oct. 5, 2020).[9]

On remand, Defendants move for summary judgment contending that Fowler does not raise a fact issue that any employer-employee relationship between Fowler and them existed. They further maintain that Fowler does not raise a fact issue that his activity at the Lieutenant's House was covered by the FLSA because he does not show that any of the

---

[8] *Id.* at 6-7.
[9] As explained by the Fifth Circuit, Fowler's § 1983 claims are barred by the two-year statute of limitations for federal civil rights claims in Texas. *See id.* Accordingly, they are not discussed in detail here.

4

Lieutenant's House was covered by the FLSA because he does not show that any of the Defendants are an "enterprise" or that he was "personally engaged in commerce or the production of goods for commerce" as those terms are defined by the FLSA.

In support of their motion, Defendants submit the Declaration of Manuel Fields, the Chief Executive Officer of David & Ivory Ministries, Inc.[10] Fields authenticates the business records the Defendants submit with their motion and states that "David & Ivory is a non-profit drug and rehabilitation center" that "provides The Lieutenant's House Re-Entry Program for Men" like Fowler "who exit the criminal justice system while recovering from substance abuse, homeless, or in need of a safe and drug-free environment."[11] Fields further states that David & Ivory is approved by the TDCJ as a substance abuse program for parolees and that it is administered by a licensed chemical dependency counselor.[12] He explains that clients of the program receive room, board, assistance with identification documents, and substance abuse counseling.[13] He states that David & Ivory maintains paper files of past clients of the re-entry program but that Fowler's individual file was destroyed in the flood in Hurricane Harvey.[14] Fields asserts that Fowler's file did not include any employment records "or any other documents that David & Ivory retains for its employees in the ordinary course of business."[15]

---

[10] Docket Entry No. 48-1 (Fields Declaration).
[11] *Id.* ¶5.
[12] *Id.* ¶6.
[13] *Id.* ¶7.
[14] *Id.* ¶¶8-9.
[15] *Id.* ¶10.

Defendants also submit, as competent summary judgment evidence, records that indicate that David & Ivory Ministries, d/b/a Lieutenant's House, is certified under the Texas Occupations Code as a Clinical Training Institution.[16] They also include David & Ivory Ministries' Articles of Incorporation as a non-profit corporation and a determination letter from the Internal Revenue Service showing that David & Ivory Ministries is a non-profit organization.[17] They also submit a certificate from the Texas Department of State Health Services showing that David & Ivory Ministries, d/b/a Lieutenant's House, is a substance abuse treatment facility under Chapter 464 of the Texas Health & Safety Code.[18]

## II. LEGAL STANDARDS

### A. Summary Judgment

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th

---

[16] *See* Docket Entry No. 48-2 at 9, Fields 000008 (Certificate of Filing the Assumed Name Certificate); *id.* at 11, Fields 000010 (Certificate of Lieutenant's House as a Clinical Training Institution).
[17] *Id.* at 26-30, Fields 000025-29.
[18] *Id.* at 31-32, Fields 000030-31.

6

Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *see also Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence."). Likewise, the nonmoving party "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citations omitted).

In the absence of proof, a reviewing court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995). A motion for summary judgment "cannot be granted simply because there is no opposition." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995). When no response is filed, however, the Court may accept as undisputed the facts set forth in support of the unopposed motion and grant summary judgment when the movant makes a prima facie showing that it is entitled to judgment. *See Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Rayha v. United Parcel Serv., Inc.*, 940 F. Supp. 1066, 1068 (S.D. Tex. 1996). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *United States v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

### B. FLSA

The FLSA imposes minimum wage and overtime payment requirements on employers of non-exempt employees who are "engaged in commerce or the production of goods for commerce." 29 U.S.C. §§ 206-207. A plaintiff claiming a violation of the FLSA must show: (1) that an employer-employee relationship existed during the claimed time period; (2) that the employee engaged in activities covered by the FLSA; (3) that the employer violated the FLSA's wage requirements; and (4) the amount of compensation that is due. *See, e.g., Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014); *Anderson v. Hearts With Hope Found.*, 713 F. App'x 278, 281 (5th Cir. 2017). To establish coverage under the FLSA, a plaintiff must show "(1) that he was personally engaged in commerce or the production of goods for commerce ('individual coverage') or (2) that he was employed by an enterprise engaged in such activity ('enterprise coverage')." *Anderson*, 713 F. App'x at 281 (citations omitted). The plaintiff bears the burden of proving that his activities are covered by the FLSA. *See id.* (citing *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007)).

### III. DISCUSSION

Defendants argue that Fowler fails to raise a fact issue that an employment relationship existed between them and Fowler, that Fowler was "engaged in commerce," or that the Lieutenant's House is an "enterprise" under the FLSA. Defendants further argue that Fowler fails to show that his participation in the therapeutic community work program is otherwise covered by the FLSA.

### A. Fowler does not show that an employer/employee relationship existed.

The Fifth Circuit uses the "economic reality test" to decide whether an employer/employee relationship existed as defined by the FLSA. *See Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010). Under this test, a court looks at whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012).

Defendants argue that there is no evidence to show that they had the power to hire and fire Fowler, that they controlled his work schedule or conditions of employment, that they determined the rate of his employment, or that they maintained employment records on his activity while he was in residence at the Lieutenant's House. They submit Fields's declaration as evidence to show that Fowler's individual file was destroyed in the flooding caused by Hurricane Harvey and that there were no employment records regarding Fowler in the file. Fowler does not point to evidence that raises a fact issue that any of the Defendants had the power to hire and fire him, supervise or dictate the conditions of his workplace, determine a rate of pay, or maintain employment records regarding his participation in the therapeutic community work program to show an employer-employee relationship. Because Fowler does not raise a fact issue that he was an employee of the Defendants, the Defendants are entitled to summary judgment on his FLSA claims.

### B. Fowler does not show that his activity was covered under the FLSA.

Even if Fowler had raised a fact issue that an employer-employee relationship existed between the parties, he fails to show that his participation in the therapeutic community work program was covered under the FLSA. Defendants contend that Fowler does not raise a fact issue that the therapeutic community work program that was required as a condition of his parole is covered by the FLSA because he was not "personally engaged in commerce or the production of goods for commerce" and the Lieutenant's House was not "engaged in commerce as an enterprise." 29 U.S.C. §§ 206(a), 207(a).

In the Fifth Circuit, the test for the FLSA's "engaged in commerce" requirement is "'whether the work is so directly and vitally related to the functioning or an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it rather than an isolated activity.'" *Williams*, 595 F.3d at 621 (quoting *Sobrinio*, 474 F.3d at 829). The Fifth Circuit has held that "[w]ork that is purely local in nature does not meet the FLSA's requirements, but '[a]ny regular contact with commerce, no matter how small, will result in coverage.'" *Id.* (citing *Sobrinio*, 474 F.3d at 829). In *Sobrinio*, for example, the Fifth Circuit held that an employee working as a security guard, janitor, and hotel driver driving hotel patrons to and from the Texas Medical Center and nearby stores was not engaged in commerce under the FLSA because his activities were "purely local in nature." *Sobrinio*, 474 F.3d at 829.

Defendants submit evidence to indicate that Fowler's activities under the Lieutenant's House Re-entry Program were limited to picking up trash, light landscaping,

10

and janitorial tasks.[19] They contend that any work he did was purely local in nature, much like the tasks the plaintiff in *Sobrinio* performed. *See Sobrinio*, 474 F.3d at 829. Fowler does not point to evidence to raise a fact issue that he was engaged in interstate commerce or that any of the Defendants were an "enterprise" as defined by the FLSA. In that regard, he does not show that his work was "so directly and vitally related to the functioning or an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it rather than an isolated activity." *Id.* Because he does not show that his participation in the therapeutic community work program was covered by the FLSA, the Defendants are entitled to summary judgment on Fowler's FLSA claims on this additional basis.

## IV. ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. Defendants' Motion for Summary Judgment (Docket Entry No. 48) is **GRANTED**, and all claims against David and Ivory Ministries – Lieutenant's House, Manuel Fields, and Donna Reasonover are **DISMISSED** with prejudice.

2. Defendants' Motions to Dismiss, (Docket Entry Nos. 39 & 45), are **DENIED as MOOT**.

3. Plaintiff's Motion for Summary Judgment, (Docket Entry No. 43), and Motion for Entry of Order, (Docket Entry No. 42), are **DENIED**.

---

[19] *See* Docket Entry No. 48-2 at 10, Fields 000009 ("The Lieutenant's House RE-ENTRY Program").

4. All other pending motions, if any, are **DENIED as MOOT**.

5. A Final Judgment shall issue separately.

The Clerk's Office will provide a copy of this Order to the parties.

SIGNED at Houston, Texas on _____JAN 0 7 2022_____.

ALFRED H. BENNETT
UNITED STATES DISTRICT JUDGE